## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SHYUEH-YUING ESTHER KATHE      *
CHENG,      *

     Plaintiff,      *

v.     

     *      Civil No. 21-03282-BAH

U.S. BUREAU OF LABOR STATISTICS et      *
al.,      *

     Defendants.      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pro se Plaintiff Shyueh-yuing Esther Kathe Cheng sued the U.S. Bureau of Labor Statistics ("BLS") and its employees Brittney Forbes, Julie Hatch Maxfield, Kayla Pinkleton, Kirk Muller, Laura A. Kelter, Madison Lau, Melissa Malone, Victoria Battista, and two defendants identified on the docket only as Ganbari and Karla (collectively, the "Defendants"), alleging Ms. Cheng was discriminated against and subjected to a hostile work environment on the basis of her race, color, sex, religion, sexual orientation, national origin, and disability, as well as in reprisal for past complaints of harassment. ECF 5, at 7.[1] Pending before the Court is Defendants' Motion to Dismiss or in the alternative for Partial Summary Judgment (the "Motion"). ECF 34. Ms. Cheng has not filed an opposition, and the time to do so has expired. *See infra* Section I.B. (describing

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page. Ms. Cheng's complaint filed on December 27, 2021, lacked a signature and certain attachments. ECF 1. On January 18, 2021, the Court granted Ms. Cheng 21 days to file a signed copy of the complaint, which Ms. Cheng filed on February 1, 2022. ECF 4. Two days later, Ms. Cheng filed a Supplement to ECF 4. ECF 5. For purposes of this Motion, the Court construes ECF 5 as the operative complaint, as ECF 4 merely referred to ECF 1 and ECF 5 includes Ms. Cheng's substantive allegations.

the notice and opportunity Ms. Cheng received to respond to the Motion). All filings include memoranda of law and exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

Ms. Cheng filed this pro se federal employment discrimination case on December 27, 2021, based on events that allegedly occurred during Ms. Cheng's one year of employment at the BLS in Washington, D.C. from August 24, 2014, to August 22, 2015. ECF 5; ECF 36-1, at 3.

### A. The Employment Discrimination Claim

Ms. Cheng worked as an Economist for the BLS in Washington, D.C. ECF 36-1 (Final Agency Decision), at 3. BLS hired Ms. Cheng pursuant to the Department of Labor's Recent Graduates Program. ECF 36-1, at 17; ECF 36-2 (Initial Decision from Administrative Judge Melissa Mehring), at 2. Appointments under the Recent Graduate program are probationary in nature and are typically limited to one year "unless the training requirements of the position warrant a longer and more structured training program." *See* 5 C.F.R. § 362.301. Ms. Cheng's one-year appointment at the BLS as a Recent Graduate began on or around August 24, 2014, and was scheduled to end on August 25, 2015. ECF 36-1, at 5; ECF 36-2, at 2–3. Ms. Cheng's appointment was not converted to permanent employment, and she stopped working for BLS on August 22, 2015.[3] *Cf.* 5 C.FR. § 362.306(b)(1) ("[A] Recent Graduate appointment expires at the end of the agency prescribed period.").

---

[2] Pursuant to a prior case management order, Defendants filed the exhibits for their Motion at the conclusion of briefing by separate docket entry. ECF 36.

[3] Defendants do not provide explanation for the three-day disparity between Ms. Cheng's scheduled end date and her final day of employment, though based on the nature of Ms. Cheng's

Ms. Cheng asserts that the decision not to convert her probationary employment into permanent employment was the result of discrimination and retaliation. ECF 36-2, at 2. Ms. Cheng cites a variety of incidents, including having her schedule changed, ECF 5, at 17, being told she was bothering another coworker, *id.*, having the "personal pens and personal hand creams, hand sanitizers and chapsticks" in her cubicle stolen, *id.* at 12, being taunted because of her "purity," *id.* at 20, and being subjected to "smears . ... of lesbianism, & also false accusations that [she] led a double life of promiscuity," *id.* She also accused her officemates of intentionally pulling the drapes in her office cubicle down each weekend and then trying to convince her that the drapes fell to the floor due to their proximity to an air conditioning vent. *Id.* at 21.

On August 17, 2015, Ms. Cheng initiated the Equal Employment Opportunity ("EEO") process by lodging an informal complaint. ECF 36-1, at 1. On November 13, 2015, after her one-year appointment concluded, Ms. Cheng filed a formal complaint with the Department of Labor's Civil Rights Center ("CRC"). *Id.* The four issues accepted for investigation were whether Ms. Cheng was subjected to unlawful disparate treatment and/or a hostile work environment due to her race, religion, sex, sexual orientation, color, national origin, genetic information, disability, and/or in reprisal for prior Equal Employment Opportunity activity when:

1. In September and October of 2014, no one took any action after she reported that some of her personal items had been stolen from her work space;
2. On February 27, 2015, no one took any action when she reported that a co-worker screamed, "Stupid" into her cubicle and called her a "homewrecker";
3. On April 6, 2015, her supervisor told her to resign by Mid-May. This was done after she reported allegations of sexual harassment by a male co-worker on April 1 and;
4. On August 21 or 22, 2015, she was terminated.

ECF 36-1, at 1–2.

---

complaint relating to the termination itself and not the *timing* of the termination, this disparity is immaterial. *See* ECF 36-1, at 2–3 (summarizing Ms. Cheng's allegations of discrimination).

Regarding the sexual harassment incident, Ms. Cheng told the EEO investigator that she reported a co-worker's alleged sexual harassment on April 1, 2015. *Id.* at 5. The alleged harassment involved an email which was described by Ms. Cheng's Division Chief as a purported April Fools' prank in which a member of the office "sent an email to everybody in the office asking if they could check to see if they had access to a particular file for which he sent a link." *Id.* at 8. The link, however, took anyone who clicked on it "to a video of Rick Astley's performance of his song, 'Never Gonna Give You Up.'" *Id.* The Division Chief concluded that the employee who sent the email had "successfully 'RickRoll'd' [the] office as an April Fools' Day joke."[4] *Id.* Ms. Cheng interpreted the email as making fun of her. *Id.*

---

[4] Though credited with numerous hits including "Together Forever" and a remake of the classic "When I Fall in Love," English pop star Rick Astley is perhaps best known for the music video for the song entitled "Never Gonna Give You Up" that eventually spawned the craze of Rickrolling. *See* Kitty Knowles, *What the heck is . . . Rickrolling?*, Forbes (February 2, 2016), https://www.forbes.com/sites/kittyknowles/2016/02/02/rickrolling-what-is-rick-rolling-rick-astley/?. The Division Chief correctly noted that "'Rick[r]olling' is an Internet meme where a disguised hyperlink is used to get people to click on it and get taken to" the music video for Astley's 1987 pop hit. ECF 36-1, at 8. Now well-recognized as a light-hearted joke, few viewers make it past the iconic introductory electronic drum roll. Those who keep watching are treated to a roughly three and a half minute video that includes a series of promises by Astley to an apparent friend-turned-love-interest, including commitments to never "say goodbye," "tell a lie," "make [the love interest] cry," "let [the love interest] down," "run around and desert [the love interest]," and much more. *See* Rick Astley, *Never Gonna Give You Up*, on Whenever You Need Somebody (RCA 1987). The Fourth Circuit Court of Appeals helpfully chronicled how Astley's musical promises to provide an exclusive, *see id.* ("You wouldn't get this from any other guy") and committed, *id.* ("a full commitment's what I'm thinking of"), relationship became an internet sensation. *See United States v. Bosyk*, 933 F.3d 319, 345 (4th Cir. 2019) (Wynn, J., dissenting).

The *Bosyk* Dissent went so far as to opine that the term "Rickrolling" has moved beyond merely directing unsuspecting computer users to Astley's video and become a phrase used to describe sending a duped user to *any* link. *Id.* ("In fact, 'rickrolling' has become such a mainstream online practice that in the lead-up to the 2018 midterm elections, an online campaign aimed to 'rick roll' unregistered voters into registering to vote.") (citations omitted). The "Rickroll" at issue here, however, was apparently of the more traditional variety as it directed BLS staffers that were unfortunate enough to click on the link provided to moving images of Astley pairing his rich baritone with a montage of late-80's fashion ensembles including denim on denim,

Ultimately, the Division Chief told EEO investigators that he chose not to convert Ms. Cheng's temporary status to permanent employment because Ms. Cheng's email communications often were inappropriate. *Id.* For instance, Ms. Cheng allegedly inappropriately included nonsupervisory staff on emails raising allegations about her belief that someone was stealing her pens and chapstick from her desk; responded to a general office email by sending "an uninvolved, nonsupervisory employee, a lengthy, unsolicited, inappropriate discussion of [Ms. Cheng's] personal life"; and copied uninvolved nonsupervisory employees in emails about the April Fools' incident in which Ms. Cheng wrote "[u]nlike some boys, girls do not think about sex all the time." *Id.* at 9–10. Additionally, another employee asked the Division Chief to intervene because that employee was receiving accusatory emails from Ms. Cheng, telling him that he was "slimy and disgusting in his behavior." *Id.* at 10. Additionally, a Senior Economist reported to the Division Chief that Ms. Cheng yelled at her and that Ms. Cheng "lunged across [her] desk," and "tried to pull the mouse out of [her] hand," after the Senior Economist asked Ms. Cheng to complete a work project. ECF 36-1, at 14.

After completing the investigation of Ms. Cheng's complaints, the U.S. Department of Labor ("DOL") CRC issued a Final Agency Decision ("FAD") on December 22, 2016. ECF 36-1. The FAD indicated that Ms. Cheng had "failed to establish that she was subjected to unlawful disparate treatment, or a hostile work environment, based upon her race, sex, genetic information, sexual orientation, color, religion, national origin, disability, or reprisal for prior EEO activity." *Id.* at 32. Additionally, Ms. Cheng "failed to present sufficient evidence to establish a case of hostile work environment." *Id.* The FAD notified Ms. Cheng that she could, within thirty (30)

---

a classic trench coat, and most famously, a black and white-striped shirt, double-breasted blazer, and crisp, pleated khakis.

days of receiving the FAD, *either* appeal the FAD to the Merit Systems Protection Board ("MSPB") *or* file a civil action in the appropriate U.S. District Court. *Id.* Ms. Cheng opted for the former and appealed to the MSPB.

Ms. Cheng appealed to the MPSB on January 22, 2017.   ECF 36-2, at 2.   The Administrative Judge ("AJ") Melissa Mehring issued a decision on March 24, 2017. *Id.* The AJ held that the failure to convert an individual at the conclusion of a term appointment is not an appealable adverse action. ECF 36-2, at 6.   Additionally, because Ms. Cheng was serving a probationary period and had completed only one year of federal service, Ms. Cheng failed to meet the statutory definition of a federal employee. ECF 36-2, at 4; 5 U.S.C. § 7511(a)(1) (defining an employee as either not probationary or as having worked for two consecutive years).

Ms. Cheng did not file a petition for review of the Initial Decision with the MSPB, and therefore the AJ's decision became final on April 28, 2017.   ECF 36-3, at 2–3.   According to PACER records, Ms. Cheng also did not seek review of the MSPB's final decision with the United States Court of Appeals for the Federal Circuit by June 27, 2017, *i.e.*, within sixty days of April 28, 2017, the date on which the Initial Decision became final. ECF 36-4, at 2–3. Ms. Cheng filed suit in this Court on December 27, 2021, approximately four to five years later. ECF 1.

### B.    Procedural History

Ms. Cheng filed the operative amended complaint on February 4, 2022. ECF 5. In it, Ms. Cheng asserts multiple causes of action including discrimination, harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), violations of the Americans with Disabilities Act of 1990 ("ADA"); and unspecified anti-discrimination laws of Maryland and Montgomery County. ECF 5, at 6. Ms. Cheng also asserts a claim for invasion of privacy under the Privacy Act of 1974 ("Privacy Act") and the "[Equal Employment Opportunity Commission's] privacy regulations, 29 C.F.R. 1611." *Id.*

6

Ms. Cheng's complaint largely tracks the allegations that she included in her EEO complaint described above. The only new allegations include that during her employment with BLS, her coworkers apparently accused her of being a spy, *see* ECF 5, at 22, and she alleges her co-workers would tear down the drapes in her office cubicle but falsely claim that the drapes had fallen because of their proximity to an air-conditioning vent. *Id.* The only allegation that post-dates Ms. Cheng's employment is her allegation that the BLS "contact[s] those around [Ms. Cheng]—ending at least three employments with their false accusations." *Id.* at 23.[5]

Defendants filed the present Motion on September 1, 2023. ECF 34. Additionally, on September 1, 2023, the Clerk of the Court issued a Rule 12/56 Notice regarding the Motion, informing Ms. Cheng that she had twenty-eight days, *i.e.*, until September 29, 2023, to file an opposition and that if she failed to do so "the Court may dismiss the case or enter judgment against [her] without further opportunity to present written argument."[6] ECF 35. To date, over eight months past the deadline, Ms. Cheng has not filed an opposition to the Motion. Thus, having determined Ms. Cheng has had ample opportunity to submit argument on Defendants' Motion and that she has received fair warning of the consequences of failing to do so, the Court will proceed and treat this Motion as ripe for adjudication.

## II.   **LEGAL STANDARD**

Defendants move to dismiss Plaintiff's claims under Rules 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure, and move in the alternative for summary judgment

---

[5] Though not entirely clear from her filing, it appears that Plaintiff is alleging that contact between BLS and potential employers has frustrated her ability to secure new employment. Plaintiff fails to provide any additional details about this allegation, such as when the alleged contact occurred, who contacted whom, or what potential employment was disrupted.

[6] Subsequently, on October 23, 2023, Ms. Cheng's case was reassigned to the undersigned.

pursuant to Rule 56, ECF 34. As such, the Court will summarize the applicable standards for these alternative motions.

### A.    Motion to Dismiss: 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F.Supp. 676, 679 (D. Md. 1996)).

The Plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction is a threshold inquiry for suit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). When a defendant challenges subject matter jurisdiction, the Court "is to regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991)); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

### B.    Motion to Dismiss: 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a complaint for improper venue. "In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp.

3d 539, 549 (D. Md. 2019). "If the court does not hold an evidentiary hearing, 'the plaintiff need only make a prima facie showing that venue is proper.'" *Id.* (quoting *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017)).

Venue may be proper in more than one judicial district. Thus, "the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'" *Id.* (quoting *Carefirst*, 235 F. Supp. 3d at 732). Under Rule 12(b)(3), a court is free to look at matters outside of the pleadings; however, the court still must draw all reasonable inferences in the light most favorable to the plaintiff. *See Silo Point II L.L.C. v. Suffolk Const. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008). If the Court determines an action has not been filed in the proper district, the Court has discretion to dismiss the complaint. *See* 28 U.S.C. § 1406(a); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 935 (E.D. Va. 2017); *Colony Ins. Co. v. Progressive Cas. Ins. Co.*, 531 F. Supp. 3d 1102, 1107 (E.D. Va. 2021).

### C.    Motion to Dismiss: 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747

(4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). In this case, the Final Agency Decision issued by the CRC, issued on December 22, 2016, ECF 36-1, at 2–33, and MSPB Initial Decision by Administrative Judge Melissa Mehring, ECF 36-2, at 2–11, are integral as the very existence of these decisions gives rise to the legal rights asserted by demonstrating administrative exhaustion, and their authenticity is not disputed.

**D.     Motion for Summary Judgment: Rule 56**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Finally, when presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's

discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020).

## III.   ANALYSIS

Because Plaintiff brings this suit pro se, the Court is mindful of its command to liberally construe pro se pleadings and to hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. *See, e.g.*, *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd* 526 F. App'x 255 (4th Cir. 2013). "Moreover, a federal court may not act as an advocate for a self-represented litigant." *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020); *Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997). Accordingly, liberal construction does not permit a court to "fashion claims for a plaintiff because she is self-represented." *Desgraviers*, 501 F. Supp. 3d at 351 (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

In this case, the Court exercises its discretion to consider Defendants' Motion as a motion to dismiss under 12(b)(3). *Pevia*, 443 F. Supp. 3d at 625. Despite liberally construing Ms. Cheng's complaint, Defendant's 12(b)(3) Motion will be **GRANTED**.

### A.   Improper Venue

First, Defendants argue Ms. Cheng's complaint should be dismissed due to improper venue. ECF 34-1, at 16. Ms. Cheng's complaint primarily alleges violations of Title VII, in the form of discrimination, hostile work environment, and retaliation. *See* ECF 5, at 7–24.

Title VII's venue provision "controls any other venue provision governing actions in federal court." *See Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983); *Harley v. Chao*, 503 F. Supp. 2d 763, 772 (M.D.N.C. 2007) ("Venue in Title VII cases is governed by Title

VII's own venue provision, 42 U.S.C. § 2000e-5(f)(3), rather than the general venue provision found in 28 U.S.C. § 1391."); *Perkins v. Town of Princeville,* 340 F. Supp. 2d 624, 626 (M.D.N.C. 2004).

> Section 2000e-5(f)(3) provides that civil actions under Title VII may be brought:
>
> in any judicial district in the State [1] in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but [4] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. §2000e-5(f)(3). Defendants argue that venue is not proper in the District of Maryland under any of the grounds in § 2000e-5(f)(3). ECF 34-1, at 16–17.

"When a defendant objects to venue pursuant to Rule 12(b)(3), the plaintiff has the burden of establishing that venue is proper in the district where the plaintiff brought the suit." *Harley,* 503 F. Supp. 2d at 772; *Perkins,* 340 F. Supp. 2d at 626; *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F. Supp. 519, 526 (M.D.N.C. 1996). Further, when ruling on a 12(b)(3) motion, "a court need not accept the plaintiff's factual allegations as true and may consider evidence outside of the pleadings." *Colony Ins. Co.,* 531 F. Supp. 3d at 1105; *see also Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 549–50 (4th Cir. 2006).

As to the first ground supporting venue, Defendants argue Ms. Cheng has failed to demonstrate that any unlawful employment practice allegedly occurred within Maryland. ECF 34-1, at 16–17. The face of the complaint does not allege that any unlawful employment practice occurred in Maryland. *See* ECF 5. The only connection to Maryland is that Maryland was Ms. Cheng's place of residence at the time of filing the present complaint. *See id.* at 1. Defendants point to a declaration from Kirk Muller, Ms. Cheng's first-line supervisor at BLS, in which Mr.

Muller attests that Ms. Cheng was employed in Washington, D.C., ECF 36-5 ¶ 4; ECF 34, at 16. As Ms. Cheng did not file an opposition to Defendants' motion, Ms. Cheng has provided no argument on this point, and the Court accepts Mr. Muller's factual assertion as true. Ms. Cheng has thus failed to establish a prima facie showing for venue based on this ground.

As to the second ground, Defendants argue Ms. Cheng's employment records are not maintained or administered in Maryland. ECF 34-1, at 16–17. Defendants submit a declaration from Anna Booker, the Branch Chief for eOPF Operations with the Office of Human Resources within the Office of the Assistant Secretary of Administration and Management at the DOL. ECF 36-6. Ms. Booker attests that during the time that Ms. Cheng was employed at DOL, her records, referred to as "eOPF," were maintained in Washington, D.C. *Id.* ¶ 4. Then, in September 2016, DOL transferred Ms. Cheng's eOPF to the National Personnel Records Center in Missouri. *Id.* ¶ 5. In November 2022, in connection with this litigation, DOL requested that Ms. Cheng's eOPF be returned to DOL in Washington, D.C., where it is currently located. *Id.* ¶¶ 5–6. As Ms. Cheng did not file an opposition to Defendants' motion, Ms. Cheng has provided no argument to counter this point, and the Court accepts Ms. Booker's factual assertions as true. Ms. Cheng has thus failed to establish a prima facie showing for this ground.

As to the third ground, Defendants assert that Ms. Cheng never requested to work in Maryland, and thus Maryland is not the "judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. §2000e-5(f)(3); *see* ECF 34-1, at 16–17. Declarant Mr. Muller attests that Ms. Cheng did not request to work in the state of Maryland. ECF 36-5 ¶ 5. Additionally, Ms. Cheng's complaint does not mention any request to work in Maryland that was declined or how any unlawful employment practice inhibited work in Maryland. *See* ECF 5. As Ms. Cheng did not file an opposition to Defendants' motion, Ms.

13

Cheng has provided no argument to counter Defendants' declarations on this point and the Court concludes Ms. Cheng failed to establish a prima facie showing for this ground as well.

Finally, ground four is also not satisfied in this case, as Defendants' principal office is not located in Maryland. ECF 34-1, at 16–17. The Court takes judicial notice of the fact that the Bureau of Labor Statistics is headquartered in Washington D.C., at 2 Massachusetts Avenue NE. Fed. R. Civ. P. 201(b) (stating a court may take judicial notice of a fact "that is not subject to reasonable dispute," meaning that it: (1) "is generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned"); *see, e.g., Myers Investigative & Sec. Servs., Inc. v. United States*, 47 Fed. Cl. 288, 297 (2000) ("Information concerning all the addresses of SSA buildings, DVA buildings, and all other federal buildings located in Ohio is the type of fact of which the court may take judicial notice."); *Protect Lake Pleasant, LLC v. Connor*, Civ. No. 07-0454, 2010 WL 5638735, at *41 (D. Ariz. July 30, 2010) (noting authority supporting that a court may take judicial notice of the location of a federal building, such as United States Post Office). In the absence of any contrary assertion from Ms. Cheng, the Court must conclude that Ms. Cheng failed to establish a prima facie showing for this ground as well.

In sum, even drawing all reasonable inferences in a light most favorable to Ms. Cheng, Ms. Cheng has not met her burden of establishing prima facie showing that venue is proper under Title VII's venue provisions. *See* ECF 34-1, at 16.

### B.    Dismissal is Appropriate as Opposed to Transfer

Federal law empowers the Court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 935 (E.D. Va. 2017). *Colony Ins. Co.*, 531 F. Supp. 3d at 1107. When considering the interests of justice, courts should seek to

promote judicial economy and avoid "inconsistent judgments" in order to maintain system integrity. *Conte*, 2020 WL 3883251, at \*4 (quoting *Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005)).

Acknowledging the general preference for transfer, *Colony Ins. Co.*, 531 F. Supp. 3d at 1107, the Court nevertheless determines that it would not be in the interests of justice to transfer Ms. Cheng's complaint to the proper venue, which appears to be the District of Columbia. *See* § 2000e-5(f)(3) (indicating the location of the alleged unauthorized employment practice is a proper venue). Ms. Cheng filed suit over four years after her MSPB appeal of her termination was finalized, and over five years after receiving a right to sue letter. *See* ECF 36-1, at 32. In Ms. Cheng's complaint, she indicated she "was told [she] has five years from [the day of her FAD] to file a lawsuit." ECF 5, at 24. Ms. Cheng does not indicate who gave her this information. *See id.* Further, this belief was not reasonable when it was contradicted by the plain language of the FAD, which notified Ms. Cheng that she had thirty (30) days after receipt of the FAD decision to either file an MSPB appeal or file a civil action.[7] ECF 36-1, at 32. The leniency afforded pro se plaintiffs simply cannot countenance a five-year dilatory filing, particularly when Ms. Cheng failed to even prosecute her late-filed claim by failing to respond to efforts to dismiss it. *See PNC Bank, Nat'l Ass'n v. Will*, Civ. No. RDB-12-0290, 2019 WL 13388341, at \*1 (D. Md. Feb. 1, 2019) ("[A]lthough this Court affords *pro se* litigants considerable leeway, a lapse of five years is not 'reasonable' under Rule 60(b)(4)–(6)."); *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 300 (4th Cir. 2017) (finding two-year delay unreasonable); *In re Myers*, Civ. No.

---

[7] Ms. Cheng is not an unsophisticated Plaintiff. *See* ECF 5-1, at 4 (including a certificate that Ms. Cheng was placed on the Dean's List at the University of Maryland College of Behavioral and Social Sciences); ECF 5-1, at 5 (including Ms. Cheng's SAT scores in the 99th percentile); ECF 5-1, at 2 (including a certificate of initiation into the Pi Alpha Alpha Honor Society).

ELH-17-149, 2017 WL 2833255, at *6 (D. Md. June 30, 2017) (finding that pro se litigant "slept on his rights" by waiting five years to file a motion to vacate).

Furthermore, transfer would not be in the interests of justice when a transfer would be fruitless. The majority of the complaints before the Court are identical to those Ms. Cheng raised before the MSPB, and they revolve around the April Fools' Day "Rickrolling" incident, the allegations of theft from her desk, and allegations of bullying. *See* ECF 5, at 7–24; ECF 36-1, at 2–5.

To the extent Ms. Cheng raises new claims at the district court level regarding the BLS allegedly impeding Ms. Cheng's current employment opportunities, Defendants argue that those claims were not exhausted and must be dismissed. ECF 34-1, at 21; *see also Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (noting exhaustion of administrative remedies is a prerequisite to bringing a Title VII claim); *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019). The Court agrees with Defendants. The only other apparent new claims between the 2015 EEO investigation and the filing of the present complaint relate to Ms. Cheng's allegations regarding the drapes in her cubicle and an allegation that she was called a "spy" by coworkers. *See* ECF 5, at 22 (accusing colleagues of taking down her cubicle drapes and blaming it on the air conditioning); ECF 5, at 7 (alleging she was accused of being a spy "in retaliation for . . . catching on to the thieves, . . . refusing to respond to demands for expensive birthday trips [and] for reporting sexual harassment [and] as an excuse when the supervisor [initiated] illegal filing" (all sic in original)). These incidents cannot form the basis of a Title VII action in federal court as they were not administratively exhausted. *See Walton*, 33 F.4th at 172. These incidents allegedly took place during the same one-year time period of Ms. Cheng's employment at the BLS and could have been included in Ms. Cheng's original EEO complaint.

Furthermore, Ms. Cheng's claim under the Privacy Act, 5 U.S.C. § 552a(e)(2), to the extent she asserts one, is frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 325–27 (1989) (noting a case is frivolous if it lacks an arguable basis in either law or fact and that a claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory"). The Privacy Act protects an individual's personal government records and provides individuals with a means to correct records that are inaccurate. *See* 5 U.S.C. § 552a (g)(1); *Brown v. Dep't of Just.*, Civ. No. RDB-18-0073, 2018 WL 4777569, at *2 (D. Md. Oct. 3, 2018). It does not provide a cause of action for perceived violations of an individual's personal privacy. *See* § 552a(g)(1) (providing cause of action for civil suit in four scenarios not present here). Additionally, as Defendants note, such actions must be brought within two years from the date on which the cause of action arises. *See* ECF 34-1, at 27 (citing 5 U.S.C. § 552a(g)(5)). As noted above, the alleged actions here took place four to five years prior to the filing of this lawsuit. *See* ECF 36-1, at 5; ECF 36-2, at 2–3.

Finally, it is unclear if Ms. Cheng raises claims against BLS and its employees under Maryland and Montgomery County anti-discrimination laws. *See* ECF 5, at 6 (asserting a two-sentence allegation that it is illegal to discriminate in Maryland and Montgomery County). Nevertheless, Defendants argue Ms. Cheng has failed to establish the validity of such claims because the Maryland Fair Employment Practices Act (MFEPA) applies to the State of Maryland and certain private employers in Maryland, not the federal government, *see* ECF 34-1, at 29 (citing Md. Code Ann., State Gov't ("SG") § 20-601(d)(1)), Ms. Cheng has failed to establish she exhausted her claim by first filing with the Maryland Commission on Civil Rights, *see id.* (citing SG § 20-1013(a)), and Ms. Cheng has not established that the United States has waived sovereign immunity to be sued under Maryland or Montgomery County anti-discrimination laws, *see id.* at 29–30. Ms. Cheng provides no counter argument. Given Ms. Cheng's lack of opposition and the

Court's mandate to avoid serving as an advocate for pro se plaintiffs, *Desgraviers*, 501 F. Supp. 3d at 351, the Court will not scour the caselaw to mount arguments on Ms. Cheng's behalf.  Due to the apparent futility of Ms. Cheng's claims, it would constitute an unjustified expenditure of judicial resources to transfer this late-filed case to the District of Columbia, and it is not in the interests of justice to draw out proceedings related to these claims.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  A separate implementing Order will issue.

Dated: <u>April 22, 2024</u>                                  <u>          /s/          </u>
                                                    Brendan A. Hurson
                                                    United States District Judge